# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORDA

Case No.: 20-cv-10063-JEM

SALTPONDS      CONDOMINIUM
ASSOCIATION, INC.

      Plaintiff,

v.

ROCKHILL    INSURANCE    COMPANY,
COLONY     INSURANCE     COMPANY,
EVANSTON INSURANCE COMPANY, FIRST
SPECIALTY  INSURANCE  CORPORATION,
HALLMARK    SPECIALTY   INSURANCE
COMPANY/LLOYD'S    OF    LONDON,
HOMELAND INSURANCE COMPANY OF
NEW  YORK,  LEXINGTON  INSURANCE
COMPANY,     LIBERTY     SURPLUS
INSURANCE CORPORATION, LLOYD'S OF
LONDON, MITSUI SUMITOMO INSURANCE
COMPANY   OF   AMERICA,   RSUI
INDEMNITY, SCOTTSDALE  INSURANCE
COMPANY,  and  UNITED  NATIONAL
INSURANCE COMPANY,

Defendants.

---

## DEFENDANT, LIBERTY SURPLUS INSURANCE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [D.E. 41] FOR FAILURE TO STATE A CAUSE OF ACTION

      Defendant, LIBERTY SURPLUS INSURANCE CORPORATION, by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), hereby files its Motion to Dismiss and Incorporated Memorandum of Law in response to the Amended Complaint [D.E. 41] filed by Plaintiff, SALTPONDS CONDOMINIUM ASSOCIATION, INC.

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION...................................................................................................1

II.  STATEMENT OF RELEVANT FACTS.............................................................2

     **A.** **The Amended Complaint** ..................................................................2

     **A.** **The Lead Policy**................................................................................3

     **B.** **The Excess Policies**...........................................................................4

III. LEGAL STANDARD ...........................................................................................6

IV. ARGUMENT ........................................................................................................9

     **A.** **Plaintiff Fails to Properly Plead That Its Losses Exceed the Primary Layer or That The Primary Layer of Insurance Has Been Exhausted** ...................................9

     **B.** **Plaintiff's Fails to Plead Sufficient Facts in order to State a Claim against Liberty Upon Which Relief Can Be Granted** .......................................12

        1. Count I – Specific Performance. ...............................................13

        2. Counts II & III – Breach of Contract. ......................................15

V.   CONCLUSION AND REQUESTED RELIEF ..................................................16

## I.      INTRODUCTION

Plaintiff, Saltponds Condominium Association, Inc.'s ("Plaintiff") claims for specific

performance and breach of contract (Counts I – III) against Defendant, Liberty Surplus Insurance

Corporation ("Liberty") must be dismissed because Plaintiff fails to state a cause of action

against Liberty.  Fatally, Plaintiff brings this suit prematurely against Liberty, who is an excess

insurer.

The subject action arises from a purported loss to property located at 3635 – 3675 Seaside

Drive, Key West, Florida (the "Insured Location") resulting from Hurricane Irma.  In connection

therewith, Plaintiff filed a claim for insurance benefits against policy number EB3R16-10008

(the "Lead Policy") issued by Defendants participating in the insurance program, including

primary and excess insurers (the "Claim").  *See* D.E. 41 at ¶¶ 9 and 12.  Notably, Liberty is not

a participating member in the primary layer of coverage.  Rather, as referenced in Lead Policy,

Liberty's participation in the program is limited to two policies issued to Plaintiff: (i) Policy No.

100125847-03, providing coverage of $15m excess of $10m; and (ii) Policy No. 1000238406-

01, providing coverage of $25m excess of $75m (collectively, the "Excess Policies").  Liberty's

coverage, pursuant to the clear and express terms of the Excess Policies, is triggered only if (1)

Plaintiff's alleged covered losses are in excess of $10m, thereby invoking Liberty's layer of

insurance, and (2) Plaintiff has exhausted the limits of the primary layer of insurance.  However,

Plaintiff alleges neither of these requirements in the Amended Complaint.  *See* D.E. 41.

Therefore, Plaintiff's specific performance and breach of contract claims against Liberty

necessarily fail: Liberty has no duty to perform under the Excess Policies until its coverage is

triggered.  *See Reesey v. FEMA*, No. 13-60488-Civ-SCOLA, 2013 WL 12086662, at *3 (S.D.

Fla. July 9, 2013) (interpreting Florida law and dismissing a breach of contract claim against an excess insurer for plaintiff's failure to plead facts that triggered the excess layer coverage).

Even if the Court were to determine that Plaintiff has plausibly pleaded facts sufficient to trigger Liberty's excess coverage, the result is still the same: Plaintiff's Amended Complaint should be dismissed.  Plaintiff has failed to plead sufficient facts as opposed to legal conclusions to state valid causes of action for specific performance and breach of contract against Liberty. Rather, through a series of broad, conclusory and unsubstantiated allegations, Plaintiff erroneously lumps together and attributes the conduct of Defendants participating in the primary layer of coverage to Liberty in support of its claims.  *See* D.E. 41 at ¶ 9.  Additionally, the Court cannot issue Plaintiff an advisory opinion related to a hypothetical injury.  *See Reesey*, No. 13-60488-Civ-SCOLA, 2013 WL 12086662, at *3 (interpreting Florida law and dismissing a breach of contract claim against an excess insurer for plaintiff's failure to plead facts that triggered the excess layer coverage); *Santa Rosa Cty v. Admin. Comm'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1193 (Fla. 1995) (courts will not render advisory opinions where plaintiff "show[s] merely the possibility of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, [and] rest in the future") (emphasis in original) (citations and quotations omitted). For all of these reasons, the Court should dismiss Plaintiff's Amended Complaint with prejudice.

## II.    STATEMENT OF RELEVANT FACTS

### A.    The Amended Complaint

Plaintiff is the owner of the Insured Location located in Monroe County, Florida.  *See* D.E. 41 at ¶¶ 3 – 6.  Plaintiff purchased a commercial property insurance policy from participating Defendants.  *See* D.E. 41 at ¶ 9.  Plaintiff alleges that as a result of Hurricane Irma, the Insured

Location was damaged prompting Plaintiff to report its claim to Defendants against the Lead Policy. *See* D.E. 41 at ¶¶ 9 – 12. Ultimately, Plaintiff alleges to have been damaged by Defendants failure to pay Plaintiff's claim as well as Defendants failure to participate in the appraisal of Plaintiff's claim. *See* D.E. 41 at ¶¶ 39 and 41. Notably, the Amended Complaint makes no specific allegations as to: (i) Liberty's involvement as an excess insurer; (ii) Liberty's obligations under the Lead Policy as an excess insurer; (iii) losses in excess of the primary layer of coverage; and (iv) exhaustion of the primary layer of coverage sufficient to trigger Liberty's duties under the Excess Policies. Plaintiff rather conclusively lumps together Liberty with Defendants participating in the primary layer of coverage to support its claims. *See* D.E. 41 at ¶¶ 5 – 41.

Accordingly, while Plaintiff conclusively alleges that Defendants were provided with notice of the Claim, certain documents and information in support of Plaintiff's Claim, a demand for appraisal, an examination under oath, and various communications in connection with the Claim, such is unsubstantiated. In fact, Liberty was not provided with notice of the loss prior to service of this lawsuit and was therefore not afforded an opportunity to investigate Plaintiff's Claim. Plaintiff filed its Amended Complaint on March 10, 2021, claiming that Defendants breached the Lead Policy and seeking damages for breach of contract and specific performance of the Lead Policy's appraisal provision. *See* D.E. 41 at ¶¶ 39, 41, 45 – 52, 53 – 61 and 62 – 70.

### B.     The Lead Policy

Participating Defendants issued a commercial property insurance policy to Skinner Select, insuring various scheduled locations, including, but not limited to, Plaintiff's Insured Location identified by Policy Number EB3R16-10008 providing coverage to the Insured Location, subject to all policy forms, endorsements, terms, conditions, limitations, and exclusions. "Appendix C – Market Security" to the Lead Policy references all insurers participating in the insurance program

– including primary and excess insurers – as identified by corresponding "Policy #" as follows:

| Coverage / Policy | Policy # | % of Overall Limit |
|---|---|---|
| **Property** | | |
| Rockhill Insurance Company (Lead) | RCPPRU000025-00 | 0.91% |
| Colony Insurance Company | XP263866 | 0.91% |
| Evanston Insurance Company | MKLV11XP005271 | 0.91% |
| First Specialty Insurance Corp. | ESP2002046 00 | 2.27% |
| Hallmark Specialty Insurance Company / Lloyds of Loncon | 93PRX16EDCB / 73PRX16EDCA | 0.45% |
| Homeland Insurance Co. of New York | 795005378 | 4.55% |
| Lexington Insurance Co. | 061628735/00 | 25.00% |
| Liberty Surplus Insurance Corp. | 1000125847-03 / 1000238406-01 | 3.64% |
| Lloyd's of London | B1230AP04438A16 | 4.55% |
| Mitsui Sumitomo Insurance Co. of America | FXP7000413 | 9.09% |
| Rockhill Insurance Company | RCPXRU000010-00 | 4.55% |
| RSUI Indemnity | NHD398666 / NHD398667 | 31.82% |
| Scottsdale Insurance Company | AJS0000461 | 9.09% |
| United National Insurance Company | LP000846 | 2.27% |
| **Terrorism** | | |
| Underwriters at Lloyd's - Syndicate 623/2623 | W1A3DC160201 | 100.00% |
| **Boiler & Machinery** | | |
| Travelers Property Casualty Company of America | BME1 9H293713-TIL-16 | 100.00% |

**Underlying/Other Insurance**
On Occasion the Insurers listed above may benefit from underlying (Re)insurance coverage, which may inure to the benefit of their attachment point, as it relates to certain and/or all perils and interests insured herein. Should such Insurance exist it does not change the limit contained on the Declaration page of this policy or any sublimits elsewhere included, nor does it alter coverages and terms contained within this policy.

*See* D.E. 41 at Ex. A.

In light of the foregoing, Liberty's obligations to Plaintiff are subject to and limited to the terms, conditions, limitations, exclusions and endorsements of the Policies referenced in the Market Security appendix to the Lead Policy. Moreover, as an excess insurer as defined by the Excess Policies referenced in the Market Security appendix to the Lead Policy, Liberty benefits from the underlying insurance coverage which come into effect to the benefit of its attachment point, $10 million and $75 million.

### C.   The Excess Policies

As referenced above, Liberty issued two policies to Plaintiff: (i) Policy No. 100125847-03, providing excess coverage of $15m excess of $10m; and (ii) Policy No. 1000238406-01, providing excess coverage of $25m excess of $75m, the Excess Policies. True and correct copies of the

Excess Policies are attached hereto as **Composite Exhibit A**.  Therefore, Liberty is merely an excess insurer whose coverage under the Excess Policies is triggered only if (1) Plaintiff's alleged covered losses are in excess of $10 million, thereby invoking Liberty's layer of insurance, and (2) Plaintiff has exhausted the limits of the primary layer of insurance.  Specifically, Excess Property Form 2016 to the Excess Policies provides as follows:

## EXCESS PROPERTY FORM

**Policy Period:** November 30th, 2016 through May 30th, 2018

This insurance is subject to the same conditions, limitations and exclusions as the underlying policy(ies) issued by:

**Primary Carriers**

| Carrier | Policy No. | Limit of Liability | Locations | Perils |
|---|---|---|---|---|
| Everest Indemnity Ins. Co. | CA3P005709-161 | $10,000,000 | Per SOV on File | All Risk Including Flood and Earthquake, Excluding CA Earthquake |
| Rockhill Ins. Co. | RCPPRU000025-00 | $10,000,000 | Per SOV on File | All Risk Including Flood and Earthquake, Excluding CA Earthquake |
| Underwriters at Lloyd's / Rockhill Insurance Co. | LLO15332 / RADP001381-00 | $10,000,000 | Per SOV on File | Flood and Earthquake Only |

It is expressly agreed that liability under this policy shall only attach after the Underlying Insurer(s) have paid or have been held liable to pay the full amount of their loss up to their stated limits (including any aggregated limits that may be applicable) as respects All Risks of Direct Physical Loss or Damage Including Earthquake and Flood.

\* \* \*

*See* **Comp. Ex. A** at "Excess Follow Form 2016".

Contrary to the broad allegations in Plaintiff's Amended Complaint, Liberty is not a participating insurer in the Lead Policy's primary layer of coverage.  As set forth above, Liberty's

excess coverage is triggered only when Plaintiff's covered losses are in excess of $10 million and

the primary layers are exhausted. *Id.* Plaintiff's failure to plead these requirements were satisfied

is fatal as to its claims against Liberty.

## III.    LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must set

forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009). In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit

has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any
> allegations in the complaint that are merely legal conclusions; and
> 2) where there are well-pleaded factual allegations, assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement to relief. Further, courts may infer from the factual
> allegations in the complaint obvious alternative explanation[s],
> which suggest lawful conduct rather than the unlawful conduct the
> plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011)

(citations omitted). "This is a stricter standard than the Supreme Court described in *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure

to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief.' " *Mukamal v. Bakes*, 378 Fed. Appx. 890, 896

(11th Cir. 2010).

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all of

the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See*

*Pielage v. McConnell*, 516 F. 3d 1282, 1284 (11th Cir. 2008). The district court shall also consider

"the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments," and where those exhibits contradict the complaint's allegations, the exhibits control.  *See F.T.C. v. AbbVie Prods. LLC*, 713 F. 3d 54, 63 (11th Cir. 2013).

While the district court is generally barred from considering materials not attached to the complaint, an exception is made for documents that are both central to the plaintiff's claim and undisputed as to authenticity.  *See Day v. Taylor*, 400 F. 3d 1272, 1275-76 (11th Cir. 2005).  Thus, for example, the district court may properly consider a document attached to a motion to dismiss, or otherwise made part of the record, if it is both central to the plaintiff's claim and indisputably authentic.  *See, e.g., Griffin Indus., Inc. v. Irvin,* 496 F. 3d 1189, 1205 (11th Cir. 2007); *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002).  Accordingly, this Court need not accept Plaintiff's bald assertions as to the meaning of the insurance contract attached to the Amended Complaint and otherwise made part of the record.  *See, e.g.*, *Iqbal*, 566 U.S. at 672 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Moreover, on a motion to dismiss for failure to state a claim, to the extent a complaint's allegations conflict with an exhibit, the exhibit must control.  Fed. R. Civ. P. 10(c), 12(b)(6); s*ee also, e.g.*, *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (where exhibit "reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F. 2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."); *Bloch v. Wells Fargo Home Mortgage*, 11-80434-CIV, 2012 WL 12862805, at *3 (S.D. Fla. Aug. 7, 2012), citing *Fladell v. Palm Beach County Canvassing Bd.*, 772 So. 2d 1240, 1242 (Fla. 2000) ("If an exhibit facially negates the cause of action asserted, the document attached as

an exhibit controls and must be considered in determining a motion to dismiss.").   Indeed, the interpretation of contracts, such as insurance policies, is a question of law for the Court.  *See Storfer v. Guarantee Trust Life Ins. Co.*, 666 F. 3d 1277, 1279 (11th Cir. 2012).

Under Florida law, the interpretation of an insurance contract—including the question of whether an insurance provision is ambiguous—is a question of law.  *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.,* 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007), citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).   If the language of an insurance policy is clear and unambiguous, courts must enforce it as written and according to its terms.  *Garcia v. Fed. Ins. Co.,* 473 F. 3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).

The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties."). Importantly, Florida law does not force insurers to "insure risks that they never contracted to cover." *Musselwhite v. Fla. Farm Gen. Ins. Co.*, 273 So. 3d 251, 255 (Fla. 1st DCA 2019). Therefore, "[b]ecause the interpretation of contracts generally is a question of law to be determined by the [district court], it may dismiss the complaint where contracts are unambiguous and do not support the plaintiff's claim." *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 509-10 (S.D.N.Y. 2012).

Case No.: 20-cv-10063-JEM

## IV.   ARGUMENT

Plaintiff's claims against Liberty should be dismissed.  Plaintiff has failed to allege the ultimate facts necessary to establish that coverage under Liberty's Policy has been triggered by Plaintiff's alleged losses, because Plaintiff fails to allege exhaustion of the primary insurance layer. This deficiency, alone, is fatal to Plaintiff's claims against Liberty.  Further, Plaintiff's claims fail to allege sufficient facts to state claims for specific performance and breach of contract against Liberty.

### A.   Plaintiff Fails to Properly Plead That Its Losses Exceed the Primary Layer Or That The Primary Layer of Insurance Has Been Exhausted

As an initial matter, Plaintiff's claims against Liberty, an excess insurer whose Excess Policies cover only those losses that exceed the primary layer of $10 million and the third excess layer of $75 million, must be dismissed because Plaintiff fails to plead that its losses exceed the primary layer of insurance or that the primary layer of insurance has been exhausted.

Plaintiff's claims for specific performance and breach of contract against Liberty fail because Plaintiff fails to allege any facts showing that the underlying primary insurance layer has been exhausted or that Plaintiff's losses are in excess of $10 million, thereby triggering Liberty's coverage.  Under Florida insurance law, "Primary coverage" exists where, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability.  *See Privilege Underwriters Reciprocal Exch. v. Hanover Ins. Group*, 304 F. Supp. 3d 1300, 1308 (S.D. Fla. 2018), citing to *St. Paul Fire & Marine Ins. Co. v. Lexington Ins. Co.*, No. 05-80230-CIV, 2006 WL 1295408, at *4 (S.D. Fla. Apr. 4, 2006).  Excess insurance, on the other hand, "exists where, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted."  *Id*.  Accordingly, an "excess insurance policy does not to come into effect unless and until the amount of damages exhausts the limits of the

primary policy." *See Conley v. Fla. Fam. Ins. Co.*, 2010 WL 3385353, at *3 (N.D. Fla. Aug. 26, 2010). Because Plaintiff has not sufficiently alleged coverage under the Excess Policies, Plaintiff's claims against Liberty should be dismissed as a matter of law. *See, e.g., Zodiac Group, Inc. v. Axis Surplus Ins. Co.*, 542 Fed. Appx. 844, 2013 WL 5718439 (11th Cir. 2013) (holding that district court properly granted insurer's motion to dismiss breach of contract and declaratory judgment claims because plain language of the policy precluded coverage for the underlying claim); *MJCM, Inc. v. Hartford Cas. Ins. Co.*, No. 8:09-CV-2275-T-17TBM, 2010 WL 1949585 (M.D. Fla. May 14, 2010) (granting motion to dismiss under Rule 12(b)(6) on breach of contract claim because the underlying lawsuit was not covered under the insurance policy at issue).

Under the terms of the Lead and Excess Policies, Liberty is an excess insurer. Specifically, Appendix C to the Lead Policy references insurers participating in the insurance program – including primary and excess insurers – as identified by corresponding "Policy #". *See* D.E. 41 at Ex. A. Accordingly, Liberty's participation in the insurance program is limited to policies numbered "100125847-03" and "1000238406-01", the Excess Policies. *Id.* Pursuant to the Declarations of the Excess Policies, Liberty's limits of liability are $15,000,000 per occurrence excess of $10,000,000 per occurrence, and $25,000,000 per occurrence excess of $75,000,000 per occurrence. *See* **Comp. Ex. A**.[1] Additionally, the "Other Insurance" provision to Appendix C to the Lead Policy states:

> On Occasion the Insurers listed above may benefit from underlying (Re)insurance coverage, which may inure to the benefit of their

---

[1] A copy of the Excess Policies which Plaintiff relies on in its Amended Complaint to state claims against Liberty by virtue of reference to the Lead Policy and Plaintiff's allegations as to Liberty's obligations to Plaintiff thereunder, is attached as **Composite Exhibit A** and is properly before the Court on Liberty's Motion. Therefore, the document is impliedly incorporated into the Amended Complaint and can be considered by the Court with Liberty's Motion. *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F. 3d 1276, 1284 (11th Cir. 2007), citing *Harris v. Ivax Corp.*, 182 F. 3d 799, 802 n. 2 (11th Cir. 1999).

> attachment point, as it relates to certain and/or all perils and interests
> insured herein. Should such insurance exist it does not change the
> limit contained on the Declaration page of this policy or any
> sublimits elsewhere included, nor does it alter coverages and terms
> contained within this policy.

*See* D.E. 41 at Ex. A.  Therefore, as an excess insurer as defined by the Excess Policies referenced in the Market Security appendix to the Lead Policy, Liberty benefits from the underlying insurance coverage layers which inure to the benefit of Liberty's $10 million and $75 million attachment points.

Further, the Excess Property Forms to the Excess Policies unambiguously identify Everest Indemnity Insurance Company, Rockhill Insurance Company, and Underwriters at Lloyd's/Rockhill Insurance Company as the "Primary Carriers" subject to a $10 million primary layer limit of liability.  *See* **Comp. Ex. A**.  The Excess Property Forms, in pertinent part, further provide as follows:

> It is expressly agreed that *liability under this policy shall only attach
> after the Underlying Insurer(s) have paid or have been held liable
> to pay the full amount of their loss up to their stated limits* (including
> any aggregated limits that may be applicable) as respects All Risks
> of Direct Physical Loss or Damage Including Earthquake and Flood.

*Id.* (emphases added).  In light of the foregoing, Liberty's obligations to provide coverage to Plaintiff is only triggered in the event that the underlying primary insurance policies are exhausted.

Plaintiff, however, makes no factual allegations in the Amended Complaint that its losses exceed the $10 million limits of the primary insurance policies.  Plaintiff's general allegations related to its losses are insufficient to invoke Liberty's layer of coverage.  Plaintiff only generally alleges that its losses are in excess of $75,000.00, which is less than Liberty's $10 million attachment point.  *See* D.E. 41 ¶¶ 1-2, 45, 53 and 62.  Additionally, Plaintiff on multiple instances alleges Defendants have failed to pay Plaintiff's Claim despite their obligations to do so under the

Lead Policy.  *Id.* at ¶¶ 39, 57 and 66.  Therefore, Plaintiff sets forth no allegations that it has exhausted the primary layer of insurance, yet another prerequisite to triggering Liberty's coverage. This is insufficient to trigger Liberty's excess layer of coverage.

Courts have held that failure to plead ultimate facts showing that excess coverage is triggered warrants dismissal.  For example, in *Reesey,* 2013 WL 12086662, at *3, the court, interpreting an insurance contract under Florida law, found that an excess policy was not triggered based on the allegations contained in the plaintiff's complaint.  Because the excess policy was not exhausted under the facts alleged, the court dismissed plaintiff's breach of insurance contract claim against the excess insurer.  *Id.*

The same outcome is warranted here: Plaintiff's allegations do not trigger the excess coverage provided by Liberty.  Until (and if) Plaintiff's losses trigger Liberty's layer of coverage and the primary layer of insurance is exhausted, there is no duty Liberty owes Plaintiff that Liberty could have allegedly breached.  *See Id.*; *see also, Royal Hosp. Corp. v. Underwriters at Lloyd's*, No. 3:18-CV-000102, 2019 WL 4228490, at *4–5 (S.D. Fla. Aug. 20, 2019), *aff'd* 2019 WL 4225579 (S.D. Fla. Sept. 5, 2019) (granting dismissal of plaintiff's claims against an excess insurer where the "plain and unambiguous contractual language" provided that the excess layer was not triggered until the primary was exhausted, holding that the plaintiff "cannot file a case against the [e]xcess [c]arriers when there is no actual dispute between the parties in the hopes that one day in the not-so-distant future there might be a real, live case or controversy").  Plaintiff has not pleaded that coverage under Liberty's Excess Policies is implicated in this case, and therefore its breach of contract claim against Liberty should be dismissed.

### B.      **Plaintiff's Fails to Plead Sufficient Facts in order to State a Claim against Liberty Upon Which Relief Can Be Granted**

Even if the Court determines Plaintiff can properly bring claims against Liberty as an excess insurer, the Complaint must still be dismissed for failure to allege sufficient facts as opposed to legal conclusions to state claims against Liberty for specific performance and breach of contract.

### 1.   Count I – Specific Performance

As a preliminary matter, Count I of Plaintiff's Amended Complaint for Specific Performance must be dismissed as a matter of law.  Specifically, Plaintiff seeks to compel appraisal of the Claim under the Lead Policy.  *See* D.E. 41 ¶¶ 45-52.  Specific performance is an equitable remedy as opposed to a legal cause of action.  To demonstrate a right to this remedy under Florida law, Plaintiff must plead facts showing: (1) plaintiff is clearly entitled to this remedy; (2) there is no adequate remedy at law; and (3) justice must require it.  *See La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332, 1334 (S.D. Fla 2010), citing *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005).  Accordingly, the first element of the claim requires Plaintiff to establish the legal requirements of entitlement to the right "by clear, definite and certain proof."  *Id*.  While Plaintiff may plead the validity of the contract at issue and its performance under it generally, when it comes to establishing entitlement to a particular right under the contract, Plaintiff will need to provide a greater degree of proof than that required under the preponderance of evidence rule.  *See La Gorge*, 733 F. Supp. 2d at 1334, citing *Humphry's v. Jarrell*, 104 So. 2d 404, 410 (Fla. 2d DCA 1958).

Notwithstanding the foregoing, Plaintiff has not pled facts to demonstrate (1) a present right to appraisal under the insurance contract, (2) no adequate remedy at law if appraisal is not ordered, or (3) that justice presently requires the appraisal.  While Plaintiff conclusively alleges to not have an adequate remedy at law, such is contradicted by the fact that, in subsequent Counts II

and III, Plaintiff asserts two causes of action for breach of contract against Liberty.  *See* D.E. 41 ¶ 50.

Additionally, in order to plead a claim for specific performance of an appraisal clause, Florida law requires Plaintiff to allege that there are no coverage issues which require judicial determination or that the dispute between the parties is simply a difference in the amount of loss. *See La Gorge*, 733 F. Supp. 2d at 1334, citing *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) ("the existence of coverage issues requiring judicial determination preclude entitlement to appraisal").  However, Plaintiff has pled no such allegations.  Therefore, Plaintiff's Amended Complaint fails to state a claim.  *Id.*

Lastly, Count I of Plaintiff's Amended Complaint is nothing more than a veiled petition to compel appraisal.  Such is supported by Plaintiff's prayer for relief which seeks an order "compelling appraisal of the loss, the appointment of a neutral umpire if necessary, the timely and fair completion of the appraisal process and a final judgment confirming the amount of the appraisal award."  *See* D.E. 41 at p. 9.  However, "Florida law does not recognize this count to be a viable claim."  *Aspen Specialty Ins. Co. v. River Oaks of Palm Beach Homeowners Ass'n, Inc.*, 2012 WL 13019190 *2 (S.D. Fla. 2012) (dismissing petition to compel appraisal). Notwithstanding, an order compelling an appraisal prior to a determination of coverage under the Lead Policy is premature.  *See Landmark Am. Ins. Co. v. Hacienda Village Homeowners Ass'n, Inc.*, 2008 WL 4371325, at *2 (M.D. Fla. 2008) (finding that an order compelling an appraisal prior to determining whether the insured's loss is covered under the policy would be premature).

For all of the foregoing reasons, Count I of Plaintiff's Amended Complaint against Liberty must be dismissed.

           2.     <u>Counts II & III for Breach of Contract</u>

To the extent that Counts II and III of Plaintiff Amended Complaint allege that Liberty breached the Lead Policy by failing to pay Plaintiff's Claims, Plaintiff has failed to plead sufficient facts to state a claim for breach of contract against Liberty. As a preliminary matter, pursuant to Appendix C – Market Security of the Lead Policy, Liberty's obligations to the Plaintiff are set in the Excess Policies. *See* D.E. 41 at Ex. A. Accordingly, Liberty's obligation to provide coverage to Plaintiff is only triggered in the event that the underlying primary layer of coverage totaling $10 million is exhausted. *See* **Comp. Ex. A.** Therefore, any alleged breach of contract against Liberty, must, at a minimum, allege a breach of the Excess Policies. However, as discussed in Section IV. A., *supra*, Plaintiff fails to plead that its losses exceed the primary layer of insurance or that the primary layer of insurance has been exhausted.

Although the general allegations to Plaintiff's Amended Complaint, contain purported facts concerning Defendants handing, investigation and adjustment of the Claim, through a series of broad, conclusory and unsubstantiated allegations, Plaintiff erroneously lumps Liberty together with all named defendants, and attributes the conduct of said defendants participating in the primary layer of coverage to Liberty in support of its claims. Accordingly, these allegations are not connected Plaintiff's demand for appraisal against Liberty, or Plaintiff's claims for breach of the Lead Policy against Liberty. Aside from these allegations, Counts II and III of Plaintiff's Amended Complaint constitute nothing more than formulaic recitations of the elements for a breach of contract action. As such, Plaintiff has failed to satisfy Rule 8(a)(2), warranting dismissal under Rule 12(b)(6).

## V.     CONCLUSION AND REQUESTED RELIEF

In light of the foregoing, Plaintiff has failed to state a cause of action against Liberty, as a matter of law, and the Court should dismiss Plaintiff's Amended Complaint against Liberty in its entirety, with prejudice.

Dated: May 4, 2021.

Respectfully submitted,

**ZELLE LLP**
*Counsel for Defendant Liberty Surplus Insurance Corporation*
SunTrust International Center
One Southeast Third Avenue, Ste. 1600
Miami, Florida 33131-4332
Tel:     786-693-2350
Fax:    612-336-9100

By: */s/ Christine M. Renella*
**CHRISTINE M. RENELLA**
Florida Bar No. 65485
crenella@zelle.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>**May 4, 2021**</u>, I have electronically filed the foregoing with the clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record:

By: */s/ Christine M. Renella*
**CHRISTINE M. RENELLA**

Case No.: 20-cv-10063-JEM

## CERTIFICATE OF SERVICE

Joseph William Janssen, III, Esq.
Janssen & Siracusa, PA
120 South Olive Avenue Suite 504
West Palm Beach, FL 33401
Tel No.: 561-420-0583
Fax: 561-420-0576
Email: jjanssen@jasilaw.com
      jsiracusa@jasilaw.com
*Counsel for Plaintiff*

Robert Malcolm Darroch, Esq.
Goodman McGuffey LLP
6751 Professional Parkway West Suite 103
Sarasota, FL 34240
Tel No.: 941-806-2980
Fax: 941-953-4411
Email: rdarroch@gm-llp.com
*Counsel for Colony Insurance Company*

Kirsten K. Johnson, Esq
Mozley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, FL 32814
Tel No.: 407-514-2765
*Counsel for Rockhill Insurance Company*

ZELLE LLP
SunTrust International Center, One Southeast Third Avenue, Ste. 1700, Miami, Florida 33131
Telephone 305-299-9939 – Facsimile 612-336-9100
17

4830-5874-5319v2