UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-10063-JEM/Becerra

SALTPONDS CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

      Defendant.

_____/

**OMNIBUS REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION TO CONFIRM REVISED APPRAISAL AWARD,
AND DEFENDANT'S MOTION TO MODIFY THE APPRAISAL AWARD**

**THIS CAUSE** came before the undersigned on Plaintiff's Motion to Confirm Revised Appraisal Award and for the Entry of Final Judgment, and Defendant's Motion to Modify the Appraisal Award (collectively, the "Motions").[1] ECF Nos. [158], [174]. The Motions are fully briefed. ECF Nos. [161], [162], [164], [165]. The undersigned also heard oral argument on the Motions. ECF No. [172]. Upon due consideration of the Motions, the pertinent portions of the record, the argument of counsel, and the relevant legal authorities, and for the reasons stated below, it is hereby **RECOMMENDED** that Plaintiff's Motion to Confirm Revised Appraisal Award and for the Entry of Final Judgment, ECF No. [158], be **GRANTED** and Defendant's Motion to Modify Appraisal Award, ECF No. [174], be **DENIED**.

**I.    BACKGROUND**

This action arises out of a surplus commercial residential property insurance policy issued

---

[1] This Matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [163].

by Defendant Rockhill Insurance Company to Plaintiff Saltponds Condominium Association, Inc. (the "Policy"). In September 2017, Plaintiff filed a claim with Rockhill based upon alleged losses caused by Hurricane Irma, and requested that Rockhill provide an appraisal of the loss in writing. ECF No. [159] at 1. Rockhill did not pay Plaintiff's claim or agree to an appraisal. ECF No. [1] at ¶¶ 39-41.

Plaintiff filed this action seeking specific performance of the Policy's appraisal provision and raised alternative claims for damages based upon breach of contract. *Id.* at 7-11. Rockhill denied coverage for Plaintiff's claim, ECF No. [18] at ¶ 6, and Plaintiff filed an Amended Complaint adding additional Defendants that have since been voluntarily dismissed. ECF Nos. [41], [152]. As against Rockhill, the Amended Complaint no longer sought specific performance of the Policy's appraisal provision and only raised claims for damages based upon breach of contract. ECF No. [41] at 9-12.

Subsequently, Plaintiff and Rockhill agreed to appraise "the scope of necessary repairs and amount of loss caused by Hurricane Irma … subject to Rockhill's remaining coverage defenses and policy limitations, if any, following the appraisal." ECF No. [148] at 2. Based upon the Parties' agreement, the Court entered an order staying the action pending completion of the appraisal process. ECF No. [152]. The Policy provides that a written itemized appraisal award, which "separate[es] the loss as to each item" and is agreed to by a majority of the appraisal panel, "shall determine the amount of loss." ECF No. [1-1] at ¶ 21 The appraisal took place, and a revised appraisal award was entered on February 15, 2023 (the "Award"). ECF No. [157-1].

The Award found that Plaintiff's "Replacement Cost Value Amount of Loss" was $2,569,175.30 and "Actual Cash Value Amount of Loss" was $2,443,450.40. ECF No. [157-1] at 2. The Award attached an Umpire's Estimate, which itemized the basis of the Award and the figures

2

used to calculate the total amounts awarded. *Id*. at 4-14. The Award states that the Umpire's Estimate "is an integral part of this Award." *Id*. at 2. The Award also states that "[a]mounts awarded and payments of same are subject to reduction for amounts previously paid, any other applicable deductibles, *policy limitations*, and/or exclusionary provisions." *Id*. at 2 (emphasis added).

**II.     THE INSTANT MOTIONS**

Rockhill now argues that the Award must be modified. Specifically, Rockhill argues that the Umpire incorrectly calculated the Award because he utilized construction prices for the costs at issue as they were on January 2023, the date of the Award, rather than on September 10, 2017, the date of the loss. ECF No. [174-1] at 1. To be sure, there is no dispute that the value of the things insured in this case and the costs to replace or rebuild items increased in the five-year period between 2017 and 2023. Indeed, the difference in prices for the items at issue in this case between the September 2017 and the January 2023 construction costs is approximately $500,000.00. ECF No. [174-1] at 2, 4.

Rockhill offers two reasons why use of January 2023 construction costs requires modification of the Award. First, Rockhill argues that the Award is limited by the Policy limitations, and the Policy itself clearly limits the recovery to replacement cost or actual cash value at the time of the loss. *Id*. at 3, 6-7. Rockhill cites to the following provision of the Policy in support of its argument:

> 10. Valuation
>
> At time of loss, the basis of adjustment shall be as follows:
>
> A. On buildings and structures, at the replacement cost new with materials of like kind and quality; if not replaced, then at the actual cash value.

 B. On machinery, equipment, furniture, fixtures and Improvements and Betterments at the replacement cost new; if not replaced, then at the actual cash value.

 C. Valuable Papers and Records and Electronic Data Processing Media at the value blank plus the cost of labor, service and/or supplies for actually reconstructing, researching, gathering information, reproducing, recreating, transcribing or copying such papers, records and Electronic Data Processing Media.

 D. Fine Arts owned by the Insured at the cost of reasonably restoring the property to its condition immediately prior to the loss, or in the event that the property cannot be restored at the appraised value prior to the loss. In absence of such appraisal, at the market value at the time of loss, plus the Insured's costs. Fine Arts, which is the property of others, at the Insured's option, either at the cost of reasonably restoring the property to its condition immediately prior to loss, or the Insured's contractual or legal liability.

 E. Property of others and property leased by the Insured, or for which the Insured has agreed to insure, at the lesser of:

 (1) the replacement cost new, or;

 (2) the amount stipulated in the lease agreement, or;

 (3) Insured's contractual or legal liability.

 F. All other property, not otherwise mentioned above, at the replacement cost new; if not replaced, then at the actual cash value.

 It is understood and agreed that as respects replacement cost new, the Insured shall have the option of replacing equipment having technological advantages and/or representing an improvement in function and/or forming part of a program of system enhancement in the event of obsolescence provided that such replacement can be accomplished without increasing the Insurer's liability.

 As respects 10.A., 10.B. and 10.F., the Insured may elect not to replace the Real Property and/or Personal Property lost, damaged, or destroyed and obtain loss settlement on a replacement cost basis if the proceeds of such loss settlement are expended in other capital expenditures related to the Insured's operations.

 Permission is granted for the Insured to replace the property with similar property at the same or another site within the territorial limits of the policy, but recovery is limited to what it would cost to replace on the same site with the same dimensions and occupancy as appears on the most recent statement of values on file with the company.

(the "Valuation Provision") ECF No. [1-1] at ¶ 10. Rockhill asserts that the phrase "at the time of

loss" at the beginning of the Valuation Provision is "clear and unambiguous" and "means that Rockhill's obligation to pay for a covered loss is limited to the value of the damaged property 'at the time of loss'." ECF No. [174-1] at 7. According to Rockhill, the Award must be modified because the Umpire failed to adhere to the Valuation Provision by calculating the value of the loss as of January 2023, instead of at the time of loss, which was September 10, 2017. *Id*.

Second, Rockhill argues that the Award should be modified pursuant to Florida Statutes § 682.14(1)(a) because the Umpire's use of 2023 construction costs is an "evident miscalculation of figures." ECF No. [174-1] at 6-8. Rockhill asserts that the Umpire's valuation of Plaintiff's loss based upon 2023 prices "clearly was miscalculation of the amount owed under the Rockhill policy." *Id*. at 7. Accordingly, Rockhill asks the Court to "enter an order returning the matter to the appraisal panel with instructions that the appraisal award be modified to reflect the value of loss using prices in effect on September 10, 2017." [2] *Id*. at 9.

Plaintiff opposes Rockhill's Motion to Modify Appraisal Award arguing that the difference in the construction costs is not a Policy limitation, but rather is a challenge to the amount of a covered loss, which is an issue that only the appraisal panel, not the Court, can decide. ECF No.

---

[2] After briefing had long closed, and after the Court heard oral argument on this matter, Rockhill attempted to raise a new argument, that "whether the appraisal award should have been calculated based upon 2017 construction costs is a coverage issue for the Court." ECF No. [177] at 3-6. Rockhill made this argument for the ***first*** time in an unauthorized second reply memorandum, which it filed to "address[ ] several issues addressed in plaintiff's [Notice of Adoption] and discussed during the recent hearing on Rockhill's Motion to Amend/Modify the Appraisal Award." *Id*. The Court struck Rockhill's filing because (i) there was nothing substantive raised in Plaintiff's Notice of Adoption to which Rockhill could reply, (ii) Rockhill already filed a reply to Plaintiff's response to its Motion to Modify, prior to oral argument and (iii) the Court did not permit supplemental briefing following oral argument, nor did Rockhill seek or obtain leave of Court before filing its second reply memorandum in contravention of Local Rule 7.1(c). ECF No. [178]. Importantly, Rockhill had ample opportunity to timely brief whether a coverage dispute existed, but waited until after oral argument—where it faced questions from the Court regarding the merits of its position— to raise this issue. Accordingly, the Court declines to consider Rockhill's untimely coverage argument.

[162] at 4-5. Plaintiff further argues that the Policy provision that Rockhill relies upon "does not describe the pricing that must be utilized" but, rather, "merely describes *when* an adjustment must take place – i.e., upon the occurrence of a loss." *Id*. at 5-8. Plaintiff also asserts that an alleged improper calculation based on consideration of the wrong pricing guidelines is not an "evident miscalculation of figures" under Fla. Stat. § 682.14(1)(a). ECF No. [164] at 5-6.

In addition to its Opposition, Plaintiff filed a Motion to Confirm Revised Appraisal Award, asking the Court to confirm the Award in its entirety and enter final judgment in its favor. ECF No. [158]. Plaintiff argues that Rockhill accepted coverage by making a partial payment on Plaintiff's claim in the amount of $250,000.00. *Id*. at 5. Plaintiff contends that when an insurer admits there is a covered loss but disputes the amount, the determination of the amount of loss is solely for the appraisal panel, whose decision is binding on the parties. *Id*. at 4-5. As such, Plaintiff asserts that the Award must be confirmed and, after deducting Rockhill's partial payment and Plaintiff's deductible, seeks entry of final judgment in the amount of $1,447,922.02, plus attorneys' fees and costs to be determined at a later date.[3] *Id*. at 3, 6.

Rockhill opposes Plaintiff's Motion for the same reasons set forth in Rockhill's Motion to Modify Appraisal Award. ECF No. [161]. That is, Rockhill contends that the Court should modify the Award because it "is contrary to Rockhill's policy valuation provision" and "contains a miscalculation of figures" because "it was calculated without consideration of the Rockhill policy's valuation provision." *Id*. at 5-8.

---

[3] $2,443,450.40 (Actual Cash Value as set forth in the Award) - $250,000.00 (partial payment) - $745,528.38 (deductible) = $1,447,922.02.

Plaintiff states that it intends to file a motion for attorneys' fees and costs in the event that the Court confirms the Award. ECF No. [158] at 6 n.1.

III.     ANALYSIS

It is undisputed that Florida law governs resolution of the Motions, as a federal court sitting in diversity applies the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 76 (1938). Under Florida law, "a trial court is not empowered to set aside [appraisal] awards for mere errors of judgment as to law or facts...." *Nestor v. Ward*, 163 So. 3d 582, 585–86 (Fla. 3d DCA 2015) (citation omitted). Indeed, the Florida Supreme Court has made clear that "when the insurer admits that there *is* a covered loss, but there is a disagreement on the *amount* of loss, it is for the appraisers to arrive at the amount to be paid. In that circumstance, the appraisers are to inspect the property and sort out how much is to be paid on account of a covered peril." *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) (quoting *Gonzalez v. State Farm Fire & Cas. Co.*, 805 So. 2d 814, 816–17 (Fla. 3d DCA 2000)). Federal and state courts in Florida apply Florida's Arbitration Code, Fla. Stat. 682.01, *et seq.*, when determining whether to confirm or modify an appraisal award. *See e.g., Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1362-63 (M.D. Fla. 2003) (applying Florida Arbitration Code to confirm appraisal award), *aff'd,* 362 F.3d 1317 (11th Cir. 2004); *Expressway Companies, Inc. v. Precision Design, Inc.*, 882 So. 2d 1016, 1018 (Fla. 3d DCA 2004) (applying Florida Arbitration Code to determine whether appraisal award should be modified).

Florida Statutes § 682.12 provides that "[a]fter a party to an [appraisal] proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court *shall issue a confirming order* unless the award is modified or corrected pursuant to s. 682.10 or s. 682.14 or is vacated pursuant to s. 682.13." FLA. STAT. § 682.12 (emphasis supplied). Florida Statutes § 682.14 governs modification of an award, providing that:

> (1) Upon [timely] motion …[4] the court shall modify or correct the award if:
>
> (a) There is an *evident miscalculation of figures* or an evident mistake in the description of any person, thing, or property referred to in the award.
>
> (b) The arbitrators have awarded upon a matter not submitted in the arbitration and the award may be corrected without affecting the merits of the decision upon the issues submitted.
>
> (c) The award is imperfect as a matter of form, not affecting the merits of the controversy.
>
> (2) If the motion is granted, the court shall modify and correct the award and confirm the award as so modified and corrected. *Otherwise, unless a motion to vacate the award under s. 682.13 is pending, the court shall confirm the award as made.*
>
> (3) A motion to modify or correct an award may be joined in the alternative with a motion to vacate the award under s. 682.13.

Fla. Stat. § 682.14 (emphasis supplied).

### A. Rockhill Has Not Shown That The Discrepancy In Value Resulting From The Date Used To Calculate Construction Costs Is A Policy Limitation.

Pursuant to the Parties' agreement to appraisal and the Court's Order Granting Motion to Stay, Rockhill may challenge the Award based upon "policy limitations, if any." Rockhill argues that the Award must be modified because the Valuation Provision constitutes a "policy limitation." Specifically, Rockhill argues that the Valuation Provision required the Umpire to use construction costs in effect on the date of loss – September 10, 2017 – to determine the Replacement Cost Value and Actual Cash Value. ECF No. [174-1] at 6-8. In short, Rockhill argues that the calculation of Replacement Cost Value and Actual Cash Value using September 2017 construction costs constitutes the Policy limit. Specifically, because the Umpire did not use the 2017 numbers, the resulting Award was greater than what would have resulted had the Umpire used the construction

---

[4] There is no dispute that Rockhill's Motion is timely.

costs in effect on the date of the loss, and thus the Award is in excess of the Policy limits and can be modified by this Court on that basis. There are at least two issues with Rockhill's argument.

First, the basis of Rockhill's argument is that the Valuation Provision "specifically states that value of a loss will be determined '[a]t time of loss'." ECF No. [174-1] at 3, 7. However, the language of the Valuation Provision is not as clear as Rockhill asserts. The ambiguity in the Valuation Provision is evident when contrasting it with the policy language at issue in analogous cases. For example, in *West 32nd/33rd Place Warehouse Condo. Assoc., Inc. v. Western World Ins. Co.*, the Court considered an insurer's motion for partial summary judgment which argued that the plaintiff's damages should be calculated using labor and construction costs in effect at the time of loss, rather than at current prices. *West 32nd/33rd Place Warehouse Condo. Assoc., Inc.*, No. 22-cv-214008, 2023 WL 3276658, at *1 (S.D. Fla. May 5, 2023). The valuation provision there stated "[w]e will determine the value of Covered Property in the event of loss or damage as follows … a. At actual cash value *as of the time of loss or damage* …." *Id.* at *3 (emphasis supplied). The Court concluded that the valuation provision applied to the costs of repair or replacement, and granted the insurer's motion because "the plain language of the policy provides that repairs and replacements are to be valued at the time of loss." *Id.* at *5. Similarly, the cases that Rockhill relies upon also involved clear valuation provisions. *See e.g., Corrales Ventures LLC v. Union Ins. Co.*, No. 20-cv-00872, 2023 WL 402124, at *4 (D. N.M. Jan. 25, 2023) ("We will determine the value of Covered Property … [a]t actual cash value *as of the time of loss or damage* ….") (emphasis supplied); *Haman, Inc. v. Chubb Custom Ins. Co.*, No. 18-cv-01534, 2021 U.S. Dist. LEXIS 196169, at *34 (N.D. Ala. Oct. 21, 2021) (same).

By contrast here, the Valuation Provision states that "[a]t time of loss, the basis of adjustment shall be as follows … A. On buildings and structures, at the replacement cost new with

9

materials of like kind and quality; if not replaced, then at the actual cash value." ECF No. [1-1] at ¶ 10. It does not expressly state the time period to use when calculating replacement cost or actual cash value.

Second, Rockhill does not provide any legal authority supporting its characterization of the Valuation Provision as a policy limitation. ECF No. [174-1] at 7-8. Rather, Rockhill cites out-of-Circuit cases supporting its interpretation of the Valuation Provision. *Id*. However, the meaning of the Valuation Provision is not the determinative question before the Court. Rockhill must first demonstrate that the Valuation Provision is a policy limitation, otherwise there is no basis to modify the Award on policy limitation grounds.

The primary case that Rockhill relies upon, *Sands on the Ocean Condominium Association v. QBE Insurance Corp.,* actually undermines its argument that the Valuation Provision is a policy limitation. *Sands on the Ocean*, No. 05-14362-Civ, 2009 WL 790120, at * 1 (S.D. Fla. March 24, 2009). In *Sands on the Ocean*, an insurer sought to reduce the appraisal award because, among other reasons, the amount awarded to bring a fire alarm system up to current code requirements "exceeded the policy limit for code upgrades of $10,000.00." *Id.* at * 3. However, the policy provision at issue in *Sands on the Ocean* stated that "[t]he most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000.00 or 5% of the Limit of Insurance applicable to that building, whichever is less." *Id*. at * 3 n.4. In short, the policy itself had a specific limitation as to what was covered—a provision that Rockhill cannot rely upon here. Although the Valuation Provision here, at best, provides some direction as to how to measure a loss, it does not provide a limitation. The absence of such a limitation distinguishes this case from *Sands on the Ocean* and other cases that discuss policy limitations in the appraisal context. *See e.g., First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 483-85 (Fla. 1st DCA 2011)

(affirming trial court's refusal "to reduce the [appraisal] award by applying the policy limitations for personal property" where policy stated in pertinent part "**Special Limits of Liability** … The special limit for each numbered category below is the total limit for all property in that category … 1. $200 on money, bank notes …. 5. $1,000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones …").

Because the Court is not persuaded that the Valuation Provision constitutes a policy limitation, Rockhill has not shown that modification of the Award by this Court is permitted.

**B. Rockhill Has Not Shown That Modification Is Warranted Based Upon An Evident Miscalculation Of Figures**

Section 682.14 provides that "the court shall modify or correct [an appraisal] award if …there is an *evident miscalculation* of figures …." FLA. STAT. § 682.14(1)(a) (emphasis supplied). Rockhill argues that the Award contains an "evident miscalculation of figures" under Fla. Stat. § 682.14. ECF No. [174-1] at 6-8. Rockhill contends that the Umpire's calculation of value "based upon January 2023 prices … clearly was a miscalculation of the amount owed under the Rockhill policy." *Id*. at 7. Rockhill has not shown that any alleged miscalculation was evident or, indeed, that a miscalculation within the meaning of the statute occurred.

At the outset, the Court notes that Rockhill did not cite any legal authority involving the "evident miscalculation" standard. Instead, Rockhill summarily asserts that the "Appraisal Award on its face shows that it was calculated without consideration of the Rockhill policy's valuation provision." ECF No. [174-1] at 7. This assertion is unavailing.

While it appears that no Florida court has explicitly defined the term "evident" as used in Section 682.14, courts in other jurisdictions have considered the term and consistently conclude that an "evident miscalculation" must be one that appears on the face of the award. *See e.g., Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998) (holding that

11

"miscalculation was not 'evident' because it did not appear on the face of the arbitration award."); *Grain v. Trinity Health*, 551 F.3d 374, 379 (6th Cir. 2008) (district court properly refused to modify arbitration award because "no such [computational] error appears on the face of the award, and [movants] have not pointed to any such error."); *D.W. Caldwell, Inc. v. W.G. Yates & Sons Constr. Co.*, 242 So. 3d 92, 101 (Miss. 2018) ("[T]he Court finds that the 'evident' (plain, obvious, or clearly understood) miscalculation must be apparent from nothing more than the four corners of the award and the contents of the arbitration record.") (citations omitted). The definition of these terms, as set forth in Merriam-Webster Dictionary, is also instructive. "Evident" is defined as "clear to the vision or understanding" and "miscalculation" is defined as "a mistake in calculation." *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary (last accessed February 14, 2024).

The error that Rockhill asserts—the Umpire's use of January 2023 construction costs—does not comport with the plain meaning of an "evident miscalculation." Indeed, the error they claim is neither clear nor a result of a mistake in the calculation of the numbers. Rather, to conclude there is an error requires a review of the Award on an issue that is, as noted above, disputed. Nor is the error they claim a result of a mistake in the calculation. Indeed, the error they claim is from an error in the analysis of the claim not the calculation of the numbers.

In particular, Rockhill argues that a miscalculation occurred because the Valuation Provision required the Umpire to use prices in effect on the date of loss. However, there is no support—and Rockhill offers none—for its assertion that a failure to determine replacement cost and actual cash value in accordance with the Valuation Provision constitutes a miscalculation of figures within the meaning of Section 682.14. As explained *supra*, the Valuation Provision does not clearly require that replacement cost and actual cash value be calculated using construction

costs in effect at the time of loss. Indeed, the case law that Rockhill relies upon highlights the ambiguity in the Valuation Provision because those cases, unlike here, involved policies that explicitly stated that the value of covered property is determined "[a]t actual cash value as of the time of loss or damage …." *See Corrales Ventures LLC*, 2023 WL 402124 at *4; *Haman, Inc.*, 2021 U.S. Dist. LEXIS 196169, at *34. The Umpire's calculation may have been based on numbers that Rockhill did not agree with, but that does not render them an *evident miscalculation*.[5] To so find would render any challenge that results in a different award an evident miscalculation. The Court sees no support for such a position either in the case law or the statute.

Indeed, the relevant case law actually undermines Rockhill's argument. For example, in *Glen Johnson, Inc. v. Ruzicka*, the Florida Second District Court of Appeal concluded that "the contention that the arbitrator's mathematics had been improperly affected by the consideration of certain evidence … does not provide grounds" for a motion to modify the award because "the motion actually did not involve an alleged evident miscalculation of figures." 517 So. 2d 762, 763 (Fla. 2d DCA 1987). Similarly, in *Marr v. Webb*, the Florida Third District Court of Appeal rejected modification of an arbitral award where the movant argued that the arbitrators improperly interpreted the parties' contract such that certain funds should have been included or excluded in

---

[5] Moreover, it should be noted that the Award does not explain the basis for the figures listed in the Umpire's Estimate—that is, whether they are based on 2017 or 2023 construction costs. ECF No. [157]. Rockhill attempts to address this deficiency by relying on the declaration of its appraiser who states that "[t]he term "Price List: FLKW8X_JAN23" on the first page of the [Umpire's] estimate is a reference to price lists containing construction prices in effect in the Key West area in January 2023." ECF No. [165-1] at 4. He further states that "[t]his term indicates that the preparer of the [Umpire's] estimate input into the computer a request that Xactimate provide an estimate using construction prices in effect in Key West area in January 2023." *Id*. The meaning of the "JAN23" reference is not self-evident. To be sure, the fact that the Court must look outside the appraisal record to consider such a detailed explanation underscores that whether the Umpire used construction costs in effect in 2023 or 2017 is not clear from either the Award or the Umpire's Estimate.

calculation of the award. *Marr*, 930 So. 2d 734, 738-39 (Fla. 3d DCA 2006). The *Marr* court found that the "arbitrators did not make an evident miscalculation" and recognized that "the arbitrators were the sole judges of the evidence and the parties' intent…." *Id*. at 739. The Third District Court of Appeal concluded that "[i]n the absence of an evident miscalculation, the trial court is not empowered to set aside arbitration awards for mere errors of judgment as to law or facts." *Id*. (quotation marks and citations omitted). *See also, Ruzicka*, 517 So. 2d 762; *Marr v. Webb*, 930 So. 2d 734, 738-39 (Fla. 3d DCA 2006); *B&H Const. & Supply Co., Inc. v. District Bd. of Trustees of Tallahassee Cmty College, Florida*, 542 So. 2d 382, 390-91 (Fla. 1st DCA 1989) (argument that panel "inadvertently and mistakenly used B&H's second amended claim for direct job costs … and should have used B&H's final amended claim for the direct job costs …thus creating an error in the arbitration award in the amount of $9,952.68 … was not an *evident* miscalculation of figures warranting modification or correction of the award.").

Given that there is no basis to modify the Award, and Rockhill has not moved to vacate it, the Court is required to confirm the Award pursuant to Florida Statutes § 682.12. *See* FLA. STAT. § 682.12 ("After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court *shall* issue a confirming order unless the award is modified or corrected pursuant to s. 682.10 or s. 682.14 or is vacated pursuant to s. 682.13.") (emphasis supplied).

### IV. CONCLUSION

Based on the foregoing reasons, it is hereby **RECOMMENDED** that Plaintiff's Motion to Confirm Revised Appraisal Award and for the Entry of Final Judgment, ECF No. [158], be **GRANTED** and Defendant's Motion to Modify Appraisal Award, ECF No. [174], be **DENIED**.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this report and Recommendation with the District Court within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a de novo determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.' 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, February 16, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**