UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:20-cv-10063-JEM

SALTPONDS CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, ROCKHILL INSURANCE COMPANY'S OBJECTION TO OMNIBUS REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ON PLAINTIFF'S MOTION TO CONFIRM REVISED APPRAISAL AWARD AND DEFENDANT'S MOTION TO MODIFY APPRAISAL AWARD [DE 182]**

Plaintiff, SALTPONDS CONDOMINIUM ASSOCIATION, INC. ("Plaintiff" or "Saltponds"), by and through its undersigned counsel, and pursuant to L.R. 7.1(c), hereby submits its Response and Memorandum of Law in Opposition to Defendant, ROCKHILL INSURANCE COMPANY's ("Defendant" or "Rockhill"), Objection to Omnibus Report and Recommendation of Magistrate Judge on Plaintiff's Motion to Confirm Revised Appraisal Award and Defendant's Motion to Modify Appraisal Award ("Objection") [DE 182] and states:

## INTRODUCTION

On June 17, 2020, Plaintiff brought this action against its insurer, Rockhill, seeking recovery for damages sustained during Hurricane Irma. [DE 1]. Plaintiff's Complaint was based on claims for specific performance of the appraisal provision contained in the Insurance Contract (Count I) and alternative claims for breach of contract (Counts II and III). [DE 1].

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

On September 30, 2020, this Court entered a paperless Order requiring the parties to file a joint status report, "addressing Rockhill's coverage determination, given the loss occurred in 2017." [DE 15]. Rockhill asserted in the Joint Status Report that a denial of Plaintiff's 2017 claim "should be forthcoming." [DE 16]. On October 5, 2020, the Court entered a second paperless Order requiring Rockhill "notify the Court conclusively concerning the status of coverage on or before October 13, 2020." [DE 17]. On October 13, 2020, Rockhill denied coverage. [DE 18].

On August 20, 2021, Plaintiff and Rockhill "reached an agreement to set the scope of necessary repairs and amount of loss caused by Hurricane Irma through appraisal, subject to Rockhill's remaining coverage defenses and policy limitations, if any, following appraisal." [DE 148]. On September 10, 2021, this Court stayed the case pending the completion of the appraisal. [DE 152].

The appraisal provision contained in Plaintiff's policy provides in relevant part, as follows:

> 21. Appraisal
>
> In case the Insured and this Insurer shall fail to agree to the amount of loss, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within Thirty (30) days of such demand. The appraisers shall select a competent and disinterested umpire;
>
> *   *   *
>
> The appraisers shall then appraise the loss, separating the loss to each item; and, failing to agree, shall submit their differences only to the umpire. **An Award in writing, so itemized of any two when filed with the Insurer, shall determine the amount of the loss.**

[DE 158-1 at p. 26] (emphasis added). On October 8, 2021, Rockhill made a partial payment on Plaintiff's claim in the amount of $250,000. [DE 158-2].

On February 15, 2023, the umpire and Plaintiff's named appraiser awarded Saltponds $2,569,175.30 for replacement cost value, and $2,443,450.40 for actual cash value. [DE 157-1].

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

Saltponds' policy contains a 3% hurricane deductible in the amount of $745,528.38. [DE 158-1 at p. 54]; [DE 158 at p. 3]. In its Motion to Confirm the Appraisal Award, Plaintiff contended it was entitled to confirmation of the Revised Appraisal Award and entry of a final judgment in the principal sum of $1,447,922.02. [DE 158]. After that Motion was filed, Defendant made an additional payment in the amount of $991,186.31. [DE 182-1]. Accordingly, Plaintiff is entitled to the entry of a final judgment in the principal sum of $456,735.71[1].

### MEMORANDUM OF LAW

As noted by Defendant, 28 U.S.C. § 636(b) provides for "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Defendant's objection is directed to the Magistrate Judge's conclusion that the appraisal award was properly calculated. [DE 182 at p. 5]. Defendant does not challenge the holding in the Report and Recommendation that Defendant's untimely coverage argument would not be considered. *See* [DE 179 at p. 5, fn. 2] (noting that the Defendant made its coverage argument for the first time in an unauthorized second reply memorandum and declining to consider this untimely argument). Since Defendant does not mention or challenge this holding, it is not subject to the de novo review of this Court and Defendant's coverage arguments in its Objection should similarly be rejected by this Court.

A. **The Appraisal Award was correctly calculated**

Defendant sought to modify the appraisal award on the **sole** basis that the award was "incorrectly calculated" because it utilized prices in effect in January 2023, when the award was issued, rather than the date of the loss – September 10, 2017. [DE 159-1 at pp. 1-2]; *see also* [DE

---

[1] $2,443,450.40 (ACV Appraisal Award) - $250,000.00 (1st partial payment) - $745,528.38 (3% Deductible) - $991,186.31 (2nd partial payment) = $456,735.71.

Case 4:20-cv-10063-JEM   Document 185   Entered on FLSD Docket 03/15/2024   Page 4 of 13

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

159-1 at p. 13] ("Rockhill has retained its right to argue that the Appraisal Award contains a miscalculation of figures and an evident mistake and does not reflect the amount owed under the Rockhill policy."). Defendant briefly reiterates the miscalculation argument set forth in its Motion for Modification. *Compare* [DE 182 at pp. 6-8] *with* [DE 159 at pp. 5-8].

The Magistrate Judge disagreed with Defendant's position and issued a Report & Recommendation holding that the Valuation Provision on which Defendant relied does not clearly provide that the value of the loss must be determined as of the date of the loss. [DE 179 at p. 9]. The Magistrate Judge further held that Defendant failed to provide any legal authority to support its characterization of the Valuation Provision as a policy limitation. [DE 179 at p. 10]. Finally, the Magistrate Judge held that Defendant did not establish any ***evident*** miscalculation warranting a modification under Section 682.14, Florida Statutes. [DE 179 at p. 11].

In its Objection, Rockhill again urges that "the revised appraisal award incorrectly applied prices for the cost to repair and replace the claimed damages that were in effect on January 10, 2023 – the date of the award." [DE 182 at pp. 1-2]. The Magistrate Judge correctly rejected the Defendant's claim that "the policy provision clearly requires that the value of the loss be determined 'at the time of loss.'" [DE 182 at p. 5]. Rockhill further asserts that this language is "plain and unambiguous." [DE 182 at p. 7]. As the Magistrate Judge held, "the language of the Valuation Provision is not as clear as Rockhill asserts." [DE 179 at p. 9].

Since Rockhill's challenge was to the **amount** of the appraisal award (arguing that the appraisal panel improperly utilized pricing from the date of the award rather than the pricing from the date of the loss), this issue was a matter for the appraisal panel. *Citizens Property Ins. Corp. v. Mango Hill Condo. Assoc.,* 54 So. 3d 578, 580 (Fla. 3d DCA 2011) (citing *Johnson v. Nationwide Mut. Ins. Co.,* 828 So. 2d 1021, 1022 (Fla. 2002); *State Farm v. Gonzalez,* 2011 WL 6057875 (Fla.

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

3d DCA 2011)). "The appraisers determine the amount of the loss, which includes **calculating the cost of repair** or replacement of the property damaged and ascertaining how much of the damage was caused by a covered peril as opposed to things such was 'normal wear and tear, dry rot, or various other designated, excluded causes.'" *Citizens Property Ins. Corp. v. River Manor Condo. Assoc., Inc.,* 125 So. 3d 846, 854 (Fla. 4th DCA 2013) (quoting *Johnson*, 828 So. 2d at 1025) (emphasis supplied)). The dollar amount agreed upon under the appraisal process is binding upon both parties. *Johnson,* 828 So. 2d at 1025.

Even if this Court could invade the province of the appraisal panel and mandate it change its calculation of the cost to repair the Property (which under Florida law would be improper), Rockhill's interpretation of the plain language of the policy is incorrect. Rockhill claims the "plain and unambiguous language of the Rockhill policy provides that the valuation of a loss will be determined at the time of loss" and accordingly, that the pricing in effect on September 10, 2017, should have been utilized by the appraisal panel. [DE 182 at p. 7]. To the contrary, the dependent clause "at the time of loss" in the policy merely describes **when** an adjustment must take place – i.e. upon the occurrence of a loss. It does not describe the pricing that must be utilized. A similar hypothetical example is "*On the third day of each month, the tenant must pay rent.*" This sentence, which, like the policy, includes an introductory dependent clause, does not indicate how much the tenant must pay in rent; rather, it describes **when** the tenant must pay rent.

The appraisal provision of the policy provides:

**10. Valuation**

At time of loss, the basis of adjustment shall be as follows:

> A. On buildings and structures, at the replacement cost new with materials of like kind and quality; if not replaced, then at the **actual cash value.**

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

[DE 158-1 at p. 21]. Reading the rest of the sentence provides greater insight into the grammatical construction of this provision. The phrase "the replacement cost new" implies the use of current pricing, not the pricing in existence more than five (5) years prior to the appraisal award, as urged by Rockhill. Thus, under the policy, when a loss occurs and triggers an adjustment of a claim, the basis of adjustment for buildings and structures is the replacement cost **new** (i.e. at the time of adjustment), and if not replaced, the actual cash value (which is defined elsewhere in the policy and also implies the use of pricing at the time of adjustment – "the cost to repair or replace less the damaged property, minus depreciation of materials and applicable labor"). [DE 158-1 at p. 30].

Notably, other provisions in the same Valuation paragraph establish different pricing timelines other than "at time of loss," lending further support to the conclusion that this dependent clause does not dictate the pricing that should be utilized for the replacement cost of real property under paragraph 10. A. For example, paragraph 10. D. mandates that one way Fine Arts may be valued is "at the appraised value **prior** to the loss."[2] [DE 158-1 at p. 21]. Moreover, as a practical matter, Saltponds could not, in 2023, obtain materials and construction at 2017 prices and it would be an absurd reading of the policy to permit Rockhill to delay resolving Saltponds' claim for years and then impose pricing that in no way reflects the current market.

Decisions from other jurisdictions are instructive. In *Woodland Creek Manor Homes Assoc., Inc. v. Amguard Ins. Co.,* 587 F.Supp.3d 865 (D. Minn. 2022)*,* the owner of a multi-unit property sued its property insurer for determination of the amount owed for hail damage under a policy that provided for replacement cost coverage. At appraisal, the panel identified two different

---

[2] The entire valuation provision for Fine Arts reads: "At the time of loss, the basis of adjustment shall be as follows: Fine Arts owned by the Insured at the cost of reasonably restoring the property to its condition immediately prior to the loss, or in the event that the property cannot be restored at the appraised value prior to the loss. In absence of such appraisal, at the market value at the time of loss, plus the Insured's costs." [DE 158-1 at p. 21].

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

RCV awards – one using date-of-loss pricing for all repairs, regardless of whether they had been completed, and one utilizing date-of-repair pricing for completed repairs and date-of-appraisal pricing for uncompleted repairs. *Id.* at 867. The difference between the two valuations was approximately $350,000.00. *Id.* After completion of appraisal, the parties submitted a dispute to the court over when the amount of loss should be measured – "when the storm happened or later, either when repairs were made or, with respect to unrepaired items, when an appraisal of the loss occurred." *Id.* at 866. The court in that case held that the insurer's position that date-of-loss pricing should apply was "not persuasive" and concluded that replacement cost value should be measured "either when repairs were made or at appraisal (and not when the loss occurred)." *Id.* at 867-868. Noting the lack of any state law answering this policy-based argument, the court cited to "one influential treatise author":

> The root concept of "replacement cost" is not, upon close examination, necessarily self-defining. Accordingly, the courts have faced various contentions as to what the concept means in practical measure terms and have determined that **it does not mean historical cost**, but the cost needed to put the insured in the position which the insured would have occupied had the loss not occurred. This almost necessarily requires that the **date of loss not serve as the measurement date**, as the necessary information may well not be available until the date of replacement, leaving the insurer to bear any increases due to rising construction costs.

*Id.* (quoting 12A *Couch on Insurance*[3] § 176:58 (3d ed. Dec. 2021 Update) (footnotes omitted) (emphasis supplied).

In *Corrales Ventures LLC v. Union Ins. Co.,* 2023 WL 402124, at *4 (D. NM Jan 25, 2023), the court analyzed the pricing that should be applied both under actual cash value and replacement cost value. The policy in *Corrales Ventures* contained specific language regarding actual cash value being determined "as of the time of the loss or damage." *Id.* However, as to replacement cost

---

[3] *Couch on Insurance* is also routinely cited by Florida courts. *See, e.g. Arch Ins. Co. v. Kubicki Draper, LLP,* 318 So. 3d 1249 (Fla. 2021); *Holmes Reg. Med. Ctr., Inc. v. Allstate Ins. Co.,* 225 So. 3d 780 (Fla. 2017).

Case 4:20-cv-10063-JEM   Document 185   Entered on FLSD Docket 03/15/2024   Page 8 of 13

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

value, the policy only stated that such amount would not be paid "[u]ntil the lost or damaged property is actually repaired or replaced." *Id.* (alteration in original). Notably, and similar to this case, the replacement cost value provision in the *Corrales Ventures* policy provided that replacement cost was limited to the least of the limit of insurance, the cost to replace the property, or the amount necessarily spent to replace the property. *Id.;* [DE 158-1 at p. 21] (indicating the basis of adjustment is "at the replacement cost new with materials of like kind and quality"). The *Corrales Ventures* court concluded that if the plaintiff chose to repair the property, the recoverable replacement cost value necessarily would be based on the actual cost of repairs and accordingly, that "the date of calculation for RCV will be sometime in the future, based on what the repairs actually cost." *Id.* (citing *Woodland Creek,* 587 F.Supp.3d at 869) (quoting with approval 12A *Couch on Insurance* §176:58).

The historical underpinnings of RCV policies also counsel toward the use of present-day pricing to extrapolate the actual cash value by deducting depreciation from the cost to repair or replace **at the time of appraisal**. In *In re State Farm Fire & Cas. Co.,* 872 F.3d 567, 575 (8th Cir. 2017), the court examined the ways in which ACV policies work a hardship on insureds and how RCV policies came into being after housing shortages and inflation in the wake of World War II. The court in *State Farm* observed:

> By adhering to the core principle of indemnity, which limits the insured's covered loss to the value of the damaged asset at the time of the loss, actual cash value policies work a hardship, particularly when the insured suffers a partial loss and needs to repair or replace the damaged component with a more valuable new item in order to restore use of the entire dwelling. As one court described this dilemma:
>
>> Since fire is an unwanted and unplanned for occurrence, why can't the owner of an older home buy insurance to cover the full cost of repair even if those repairs make it a better or more valuable building? ... Instead of apportioning the cost of repair after a fire between the actual cash value, to be paid by the insurer, and the

Case 4:20-cv-10063-JEM   Document 185   Entered on FLSD Docket 03/15/2024   Page 9 of 13

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

> betterment to be paid by the insured, why can't the policyholder simply pay a higher premium each year but not have to pay anything more to have his home fully repaired in the event of fire?

*Travelers v. Armstrong,* 442 N.E.2d at 353. Spurred by post-World War II housing shortages and inflation, the legislatures of many States authorized, and major property insurers issued, policies that responded to this dilemma with replacement cost coverage. Missouri did not enact legislation, but its courts enforced replacement cost coverage provisions, with an important caveat reflecting the indemnity principle:

> The purpose of the replacement cost coverage was to make funds available that would enable plaintiffs to replace their destroyed or damaged premises ... notwithstanding that the value of those premises before the loss had been lessened by depreciation. Plaintiffs were not, however, entitled to more than the actual cash value of the destroyed or damaged premises until repair, restoration or replacement of those premises was completed.

*Id.* (quoting *Miller v. Farm Bureau Town & Country Ins. Co.,* 6 S.W.3d 432, 438 (Mo. App. 2000); *Federated Mut. Ins. Co. v. Moody Station & Grocery,* 821 F.3d 973, 977–78 (8th Cir. 2016)).

*Zaitchick v. Am. Motorists Ins. Co.,* 554 F.Supp. 209, 212 (S.D. NY 1982) also supports the idea that RCV should be calculated using present-day values. In *Zaitchick,* the court rejected the insurer's fraud defense because the plaintiffs' claim was not fraudulently inflated where they sought replacement cost value – an amount nearly double the actual cash value. *Id.* The court held that "[i]t is to be expected, after a number of years of high inflation, that the replacement cost will be much higher than the actual cash value." *Id.* Similarly, here, where the policy dictates that actual cash value is derived by subtracting "depreciation of materials and applicable labor" from "the cost to repair or replace the damaged property" [DE 158-1 at p. 30], the proper application is today's pricing for replacement cost value, and then subtracting depreciation of materials and applicable labor to arrive at the actual cash value.

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

The Magistrate Judge properly observed that the decision in *West 32nd/33rd Place Warehouse Condo. Assoc., Inc. v. Western World Ins. Co.,* No. 22-cv-214008, 2023 WL 3276658, at * 1 (S.D. Fla. May 5, 2023), counsels against Rockhill's position. As the Magistrate Judge held, the *West 32nd* court faced a similar argument that pricing at the time of the loss, rather than current prices, should be applied. The language in the policy in *West 32nd* provided that the valuation would be "actual cash value *as of the time of loss or damage.*" *Id.* (emphasis supplied). By contrast, the provision here provides that, "At time of loss, the basis of adjustment shall be … at the replacement cost new…; if not replaced, then at the actual cash value." As the Magistrate Judge properly observed, unlike the provision in *West 32nd*, the provision here "does not expressly state the time period to use when calculating replacement cost or actual cash value." The Magistrate Judge correctly concluded that there was no evident miscalculation of the award and that the policy provision is not as clear and unambiguous as Rockhill claims. The Report and Recommendation should be affirmed on this basis.

**B. Defendant's coverage argument has been waived**

Defendant never attempted to timely assert any coverage arguments. Indeed, as noted in the Report and Recommendation, "[a]fter briefing had long closed, and after the Court heard oral argument on this matter, Rockhill attempted to raise a new argument that 'whether the appraisal award should have been calculated based upon 2017 construction costs is a coverage issue for the Court.'" [DE 179 at p. 5, fn. 2] (noting that the Defendant made its coverage argument for the first time in an unauthorized second reply memorandum and declining to consider this untimely argument); *see also* [DE 178] (Order Striking Defendant's Reply to Plaintiff's Notice of Adoption because of Defendant's "obvious effort to belatedly raise an issue that Defendant could have – but did not – advocate in its previous, multiple briefs."). Rather than objecting to the Magistrate

Case 4:20-cv-10063-JEM Document 185 Entered on FLSD Docket 03/15/2024 Page 11 of 13

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

Judge's finding that its coverage argument was untimely and would not be considered, Defendant instead devotes the bulk of its Objection to arguing the coverage issue anew, failing to highlight for this Court that the Magistrate Judge already found this argument to have not been timely raised. *See* [DE 178]; [DE 182 at pp. 8-15]. Since Defendant did not challenge the holding in the Report and Recommendation that the coverage argument would not be considered, it has waived its right to assert that argument again in its Objection.

Further, pursuant to Section 682.14, Fla. Stat[4]., a motion for modification must be made within 90 days after the movant receives notice of an award. In this case, the arbitration award was issued on February 15, 2023. [DE 157-1]. Both parties filed their respective motions to confirm and to modify the appraisal award within 90 days. *See* [DE 158; DE 159-1], both filed on March 14, 2023. However, the first time Defendant raised its argument that a coverage defense existed was on November 6, 2023 – 264 days after the appraisal award was issued. *See* [DE 177] and [DE 178] (Order striking unauthorized "Reply" that asserted new coverage argument). Accordingly, under the statute that governs the confirmation process, this argument is untimely and also should not be considered on this basis.

### C. Defendant's Coverage Argument is without merit

Even if it was proper for this Court to entertain Defendant's coverage argument (which Plaintiff does not concede), the argument is without merit. As set forth *supra*, the ambiguous language in the policy does not clearly provide for the calculation Defendant urges. Rather, the placement of the clause "at the time of loss" dictates when an action should take place, not the pricing that should be applied. *See* [DE 179 at p. 9] (contrasting the language in the Rockhill policy

---

[4] *See A.L. Gary & Assoc., Inc. v. Travelers Indem. Co.,* 2008 WL 11333729, at *6 (S.D. Fla. Aug. 27, 2008) (recognizing that "Florida courts apply the procedures provided by the Arbitration Code to the confirmation process of an appraisal award") (internal citations omitted).

Case 4:20-cv-10063-JEM  Document 185  Entered on FLSD Docket 03/15/2024  Page 12 of 13

CASE NO.: 4:20-cv-10063-JEM
*Plaintiff's Response and Incorporated Memorandum of Law
in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

with the language in other policies that specifically dictate the pricing to be used). This ambiguity must be construed against Rockhill. *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.,* 561 F.3d 1181, 1191 (11th Cir. 2009) (recognizing "the settled rule that ambiguous provisions in an insurance policy are construed against the insurer"). Rockhill is simply wrong that its provision, which begins with the phrase "at the time of loss" is equivalent to "actual cash value ***as of the time of loss*** or damage." *See West 32nd,* 2023 WL 3276658, at *1; *Corrales Ventures,* 2023 WL 402124, at *4; *Haman, Inc. v. Chubb Custom Ins. Co.,* No. 18-cv-01534, 2021 WL 4749795, at *3 (N.D. Ala. Oct. 12, 2021). Any doubt in this regard must be resolved against Rockhill. *Lago Canyon,* 561 F.3d at 1191.

## CONCLUSION

WHEREFORE, Plaintiff, SALTPONDS CONDOMINIUM ASSOCIATION, INC., respectfully requests this Honorable Court affirm and adopt the Report and Recommendation and enter judgment in the outstanding amount of the appraisal award, $456,735.71, and grant such other and further relief the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 15, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*[Signature Page follows]*

CASE NO.: 4:20-cv-10063-JEM<br>
*Plaintiff's Response and Incorporated Memorandum of Law*<br>
*in Opposition to Defendant's Objection to Omnibus Report and Recommendation*

            JANSSEN SIRACUSA PLLC
            *Counsel for Plaintiff, Saltponds*
            *Condominium Association, Inc.*
            19 West Flagler Street, Suite 618
            Miami, FL 33130
            Telephone (305) 428-2776
            Facsimile (561) 420-0576
            Email: jjanssen@jasilaw.com
            Email: jsiracusa@jasilaw.com

          By: **s/ *John M. Siracusa***
            JOSEPH W. JANSSEN, III
            Florida Bar No. 160067
            JOHN M. SIRACUSA
            Florida Bar No. 159670

**SERVICE LIST:**

**Elizabeth D. Salinas Esq.**
Mozley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, Florida 32814
Tel.: (407) 514-2765
Email: esalinas@MFLLaw.com
*Counsel for Defendant, Rockhill Insurance Company*